**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

FERNAND R. VERRIER                    :
                                      :
        v.                            :         CIVIL NO. CCB-09-402
                                      :
KATHLEEN SEBELIUS, Secretary,         :
United States Department of           :
Health and Human Services             :
                              ...o0o...

## MEMORANDUM

Now pending before the court are the defendant's motion to dismiss or, in the alternative,

for summary judgment, the plaintiff's motion to strike, and the plaintiff's motion for continuance

of the defendant's motion pursuant to Federal Rule of Civil Procedure 56(f).  Plaintiff Fernand

R. Verrier, formerly an employee of the Indian Health Service ("IHS"), a division of the United

States Department of Health and Human Services ("HHS"), has filed the present lawsuit against

the HHS Secretary ("the Secretary") alleging three causes of action: (1) discrimination on the

basis of race and gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. §§ 2000e *et seq.*; (2) discrimination on the basis of age in violation of the Age

Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*; and (3)

retaliation in violation of Title VII.  The issues in this case have been fully briefed and no oral

argument is necessary.  For the following reasons the plaintiff's motions will be denied and the

defendant's motion will be granted.

## BACKGROUND

Mr. Verrier is a Caucasian male born in 1943 and was, until March 6, 2008, a Deputy

Director Supervisory Accountant, GS-15, at the Office of Finance and Accounting ("OFA") of

the IHS.  He was hired for this position in September 2006.  At that time, Mr. Verrier's first level

supervisor was Tommy Thompson, Director of OFA.  Beginning in January 2007, however, he began reporting to Sandra Winfrey and Ronald Grinnell who replaced Mr. Thompson as Acting Co-Directors.  Mr. Verrier's responsibilities included managing divisions within the OFA that handled auditing, budget formulation, budget execution, systems review and financial operations.

Mr. Verrier alleges that he was discriminated against because of his race, gender and age. At least three particular events form the basis for his discrimination and retaliation claims. According to Mr. Verrier, these allegedly discriminatory acts were motivated by animus towards him because he is not Native American.  First, Mr. Verrier's supervisors issued him a letter of reprimand on April 12, 2007 for failing to follow directives and disrespectful behavior.  (Def.'s Summ. J. Mem. at Ex. 7.)  The letter indicated that Mr. Verrier had failed to follow Ms. Winfrey's directions when he delegated certain tasks to his staff after she had specifically asked that he accomplish them himself.  (*Id.*)

Second, Mr. Verrier's supervisors placed him on a ninety-day Performance Improvement Plan ("PIP") on June 22, 2007 after he received negative ratings on a mid-year performance review.  His performance was deemed "unacceptable" with regard to his analytic ability and technical skills.  (*Id.* at Ex. 9.)  It stated that Mr. Verrier had a "very limited understanding of the IHS or HQ Finance financial processes" and that "[a]ssignments that are given to [him] are immediately given to subordinate staff and submitted . . . with no analysis of the work product by [him]."  (*Id.*)  The plan also identified specific actions that he must take to improve performance, and ways in which his supervisors would assist in his improvement.  The PIP was to last for ninety days and only applied to the areas of Mr. Verrier's performance in which he had received low ratings.  According to the plan, failure to improve would result in reassignment, reduction in grade or removal.

Third, Mr. Verrier alleges that he was threatened with removal from his position on July 20, 2007, but he has not provided any specific facts with regard to who made the threat, or in what manner they did so.  Soon thereafter, on July 26, 2007, Mr. Verrier sent an email to Phyllis Eddy, Deputy Director for Management Operations at IHS, informing her that he planned to take extended sick leave starting August 1, 2007 rather than retire as he had been planning to do.  (*Id.* at Ex. 11.)  He indicated that he was depressed as a result of the treatment he was receiving from Ms. Winfrey and Mr. Grinnell and stated that he believed that "Ms. Sandra Winfrey discriminates against veterans."  (*Id.*)  In response, Mr. Grinnell wrote a letter to Mr. Verrier dated July 27, 2007, which explained that sick leave must be approved, and requested that Mr. Verrier submit the appropriate medical documentation by August 6, 2007. (*Id.* at Ex. 12.) Failure to do so, Mr. Grinnell wrote, could result in adverse action being taken against Mr. Verrier in the form of separating him from his position for inability to perform his duties.  (*Id.*) Subsequently, Mr. Verrier provided appropriate medical documentation, and his extended sick leave was approved.

Mr. Verrier returned to work from sick leave on November 30, 2007.  By this time Elizabeth Fowler had become Mr. Verrier's first level supervisor and she sent him home because he lacked permission from his doctors to return to work.  Mr. Verrier's doctor later submitted a letter to IHS dated January 8, 2008 advising that "although continued improvement is likely, it is unlikely that a return to his previous department will ever be recommended."  (*Id.* at Ex. 15; Am. Compl. at ¶ 26.)  Thereafter, Ms. Fowler issued Mr. Verrier a notice of proposed removal on January 16, 2008 for medical inability to perform the essential functions of his position, with or without reasonable accommodation.  (Def.'s Summ. J. Mem. at Ex. 16.)  The notice provided Mr. Verrier with time to respond, but Mr. Verrier instead chose to voluntarily retire, effective

March 6, 2008.  (*Id*. at Ex. 18.)  Mr. Verrier alleges that his proposed removal was retaliation

"because of Plaintiff's supervisors [sic] knowledge of Plaintiff's prior EEO Complaint activity

and also because they had become aware of Plaintiff's whistleblowing activities, demonstrating

the incompetence of Native-American IHS employees."  (Am. Compl. at ¶ 22.)  He also alleges

that he was "forced to involuntarily retire".[1]  (*Id*. at ¶ 23.)  According to Mr. Verrier, after his

"constructive discharge", his position was filled by Ken Cannon, a Native-American.  (*Id*. at ¶

30.)  Mr. Cannon, alleges Mr. Verrier, was not qualified for the position because he does not

have a degree in accounting.  (*Id*.)

By the time of his retirement Mr. Verrier had had more than one communication with the

agency Equal Employment Opportunity ("EEO") office.  Mr. Verrier first contacted an EEO

counselor on July 18, 2007 via email complaining that he was being discriminated against on

account of his age, military background and experience.  His email stated that he wanted to

discuss "filing an EEO complaint regarding the Unacceptable Mid-Year Performance Review I

received from Sandra Winfrey and Ron Grinnell on 22nd June 2007."  (Def.'s Summ. J. Mem. at

Ex. 10.)  The email did not mention race or gender.  According to the defendant, Mr. Verrier first

filled out a pre-intake informal complaint on July 23, 2007, and again made informal contact

with an EEO investigator on January 18, 2008.  Subsequently, he filed a formal EEO

administrative complaint on April 1, 2008.  Mr. Verrier identified the bases for his complaint as

discrimination based on (1) retaliation, (2) color, and (3) age.  (*Id*. at Ex. 17.)

The defendant has filed a motion to dismiss for failure to exhaust administrative remedies

and failure to state a claim for relief or, in the alternative, for summary judgment.  Mr. Verrier

---

[1]     Mr. Verrier's complaint does not include his proposed removal on January 16, 2008, or
his decision to leave, as bases for his substantive discrimination claims.

has filed a motion to strike all twenty exhibits attached to the defendant's motion.  He also filed a

motion for continuance under Rule 56(f).

## ANALYSIS

A.      *Motion to Strike*

Mr. Verrier has moved to strike all twenty exhibits filed in support of the defendant's

motion for summary judgment, including three declarations he made during the EEO

administrative process, documents he signed, and emails he wrote. [2]  His motion will be denied.

Mr. Verrier makes various arguments regarding the admissibility of the defendant's

exhibits, most of which were part of Mr. Verrier's EEO investigation file.  In particular, he

argues that the notarized affidavits of Ms. Fowler, Mr. Grinnell and Mr. Winfrey, as well as three

of his own, are inadmissible because they do not comply with Rule 56(e) and 28 U.S.C. § 1746.

He further claims that these affidavits are inadmissible because not all documents they reference

are attached and because they contain hearsay.  He also argues that the remaining exhibits,

including his letter of reprimand, performance evaluation and PIP, are not self-authenticating,

and that some contain hearsay.  Notably, Mr. Verrier has not argued that any of the exhibits are

not what they claim to be.  But to the extent that there were any deficiencies with regard to

authentication, they have been cured by the attachment of new affidavits to the defendant's reply

---

[2]      The following is a complete list of the exhibits: Affidavit of Fernand Verrier (Ex. 1); IHS
Organizational Chart (Ex. 2); Affidavit of Sandra Winfrey (Ex. 3); Affidavit of Ronald Grinnell
(Ex. 4); Emails between Sandra Winfrey and Fernand Verrier (Ex. 5); Emails among Fernand
Verrier, Phyllis Eddy, Ronald Grinnell and Sandra Winfrey (Ex. 6); Letter of Reprimand (Ex. 7);
Performance Appraisal (Ex. 8); Performance Improvement Plan (Ex. 9); Email from Fernand
Verrier to EEO Counselor (Ex. 10); Emails among Fernand Verrier, Phyllis Eddy and other IHS
Human Resources Employees (Ex. 11); Letter from Ronald Grinnell to Fernand Verrier (Ex. 12);
Affidavit of Elizabeth Fowler (Ex. 13); Affidavit of Fernand Verrier (Ex. 14); Letter to IHS from
Doctor David Pollin (Ex. 15); Letter of Proposed Removal from Elizabeth Fowler to Fernand
Verrier (Ex. 16); EEO Complaint filed by Fernand Verrier (Ex. 17); IHS Retirement Form
Signed by Fernand Verrier (Ex. 18); IHS Form Requesting Medical Disability for Fernand
Verrier (Ex. 19); and Affidavit of Fernand Verrier (Ex. 20).

brief.

1.      *Affidavits: Exhibits 1, 3, 4, 13, 14 and 20*

Mr. Verrier argues that three affidavits he executed during the EEO administrative

process, as well as those executed by Ms. Fowler, Mr. Grinnell and Ms. Winfrey, should be

stricken for failure to comply with Rule 56(e) and 28 U.S.C. § 1746.

28 U.S.C. § 1746 requires sworn declarations to be made "in substantially the following

form: . . . 'I declare (or certify, verify or state) under penalty of perjury that the foregoing is true

and correct.  Executed on (date).  (Signature).'"  Furthermore, Rule 56(e) requires that affidavits

supporting or opposing a motion for summary judgment "must be made on personal knowledge"

and "show that the affiant is competent to testify on the matters stated."  Mr. Verrier argues that

the aforementioned affidavits fail to comply with § 1746 and Rule 56(e) because they all contain

a paragraph stating that the statements included are "true and correct to the best of my

knowledge and recollection", followed by another paragraph stating that, "I declare, certify,

verify or state under penalty of perjury that the foregoing is true and correct."  This second

paragraph, Mr. Verrier seems to argue, renders the affidavits inadmissible because the affiant has

stated that the information is true and correct only to "the best of my knowledge and

recollection."

Courts have discretion to allow declarations with subscriptions that are not in precise

compliance with § 1746.  *See LeBoeuf, Lamb, Greene & MacRae, LLP v. Worsham*, 185 F.3d 61,

65-66 (2d Cir. 1999).  In fact, the statute itself requires simply that verification be in

"substantially" the prescribed form.  *Equal Employment Opportunity Comm'n v. World's Finest

Chocolate, Inc.*, 701 F. Supp. 637, 639 (N.D. Ill. 1988).  What is crucial is that the declarant sign

his or her name under penalty of perjury.  *Id.*  For instance, in *LeBoeuf*, the Second Circuit found

that a letter signed and dated "under penalty of perjury", but lacking the exact language of §

1746 or a statement that the contents were "true and correct", was nevertheless admissible

because it "substantially complie[d]" with the form of § 1746, which is all that the statute

requires. *LeBoeuf*, 185 F.3d at 65-66.

Here, all affiants signed under penalty of perjury that the statements they made were

"true and correct", and also indicated that they were made to the best of their personal

knowledge and recollection.  The inclusion of the phrase "to the best" does not negate the fact

that they signed the documents under penalty of perjury, which the court can reasonably infer

means the affiants believed their statements to be true and correct and based on personal

knowledge.  Accordingly, the court finds Mr. Verrier's arguments as to the inadmissibility of

Exhibits 1, 3, 4, 13, 14, and 20 unavailing.  Moreover, the defendant has cured any deficiencies

by submitting revised declarations of Ms. Winfrey, Mr. Grinnell and Ms. Fowler.  (*See* Def.'s

Reply at Ex. 21, 22 & 23.)

Further, although Mr. Verrier cites no authority for the proposition that admissibility

depends on the attachment of all documents referenced in an affidavit, even those not relied upon

in a motion for summary judgment, the defendant has subsequently attached all referenced

documents.  (*See id*. at Ex. 21, 22 & 23.)   Finally, even assuming without deciding that portions

of the affidavits contain hearsay, the court has not relied on the disputed statements, nor does

their inclusion render the entirety of each affidavit inadmissible.

    2.    *Remaining Exhibits*

Mr. Verrier further argues that Exhibits 2, 5, 6, 7, 8, 9, 10, 11, 12, 15, 16, 17, 18, and 19

should not be considered by the court because they have not been properly authenticated by

affidavit.  As mentioned earlier, however, Mr. Verrier has at no point argued that any of the

exhibits are not when they purport to be.  In fact, he refers to many of them in his complaint and

papers.  Included in this list of allegedly un-authenticated exhibits are copies of emails sent and

received by Mr. Verrier to and from his supervisors and EEO counselor, a copy of his letter of

reprimand, a copy of his performance review, a copy of his PIP, a copy of his EEO complaint, a

copy of a letter sent by his doctor to IHS, and other documents related to Mr. Verrier's personnel

actions.  Several of these documents are signed by Mr. Verrier himself.

The court finds Mr. Verrier's arguments entirely unpersuasive as all of these documents

are self-authenticating pursuant to Federal Rule of Evidence 902.  Nevertheless, out of an

abundance of caution, all but Exhibit 18 have been authenticated by affidavits attached to the

defendant's reply brief and, therefore, any concerns about the authenticity of these documents

have been addressed.[3]  Moreover, any hearsay contained in these documents is not relied upon

by the court and does not render each entirely inadmissible.

For the above-stated reasons, Mr. Verrier's motion to strike will be denied.

B.    *Motion for a Continuance*

Pursuant to Rule 56(f) Mr. Verrier has moved for continuance of the defendant's motion

for summary judgment.  He argues that he cannot fully respond to the motion because "many of

the facts are largely in the possession of the Agency and its employees."  (Verrier Rule 56(f)

Decl. at ¶ 3.)  For the reasons that follow, Mr. Verrier's motion will be denied.

Generally, summary judgment is only appropriate after the completion of discovery.  *See*

*Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995).  Thus, where a nonmoving party shows

by affidavit that, for specific reasons, more discovery is needed, a court may deny a premature

---

[3]    The defendant has not subsequently authenticated Exhibit 18 by affidavit.  Nevertheless,
the court finds that Mr. Verrier's personnel form indicating his change in status due to voluntary
retirement is self-authenticating pursuant to Federal Rule of Evidence 902, because it is the
official DHHS SF-52 form used for personnel actions and contains Mr. Verrier's signature.

motion for summary judgment or order a continuance pursuant to Rule 56(f). *See* Fed. R. Civ.

P. 56(f). But "the need for discovery must be assessed in the context of the particular case at

hand", *Alcolac, Inc. v. St. Paul Fire and Marine Ins. Co.*, 716 F. Supp. 1541, 1542-43 (D. Md.

1989), and the nonmoving party must present an affidavit to the court that "particularly specifies

legitimate needs for further discovery." *Nguyen*, 44 F.3d at 242.

"The purpose of rule 56(f) is not to allow the non-moving party to engage in a fishing

expedition." *Adams v. Giant Food, Inc.*, 225 F. Supp. 2d 600, 607 (D. Md. 2002). Accordingly,

a Rule 56(f) motion "is properly denied when the additional evidence sought to be discovered

would not create a genuine issue of material fact sufficient to defeat summary judgment."

*Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006) (citing *Strag v. Board of*

*Trustees, Craven Comm. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995)). For instance, a judge in this

District denied a Rule 56(f) motion in a case involving discrimination and retaliation claims after

finding that the plaintiff had "failed to demonstrate that the evidence he [sought] to discover

[would] materially affect the outcome of [the] case" because the plaintiff could not show that he

was subjected to an adverse employment action. *Id.* Furthermore, an administrative

investigation of a plaintiff's claims may also support the denial of a Rule 56(f) motion because a

wealth of information is already available to respond to the defendant's motion for summary

judgment. *See id.* at 421 (finding that the plaintiff had "presented no reason as to why the

discovery provided at the administrative level [was] insufficient to allow Plaintiff to respond to

Defendant's Motion for Summary Judgment.").

In this case, although Mr. Verrier's affidavit describes a variety of information he seeks

to discover,[4] none of this information would alter the fact that he has not, and cannot, set forth a

---

[4]     Most of the discovery needs that Mr. Verrier describes relate to the factual basis for his

*prima facie* case of discrimination under Title VII or the ADEA. As will be discussed in more detail in the following section of this Memorandum, the events Mr. Verrier describes in his complaint are either not properly before this court for failure to exhaust administrative remedies, or do not constitute an adverse employment action as a matter of law. Thus, none of the discovery he seeks, such as documents relating to complaints by other employees, evidence of his qualifications or of his supervisors' qualifications, nor the content of his personnel file, will create a genuine issue of material fact sufficient to defeat summary judgment. Accordingly, discovery on Mr. Verrier's discrimination claims will not change the outcome of his case and is unnecessary.

Furthermore, none of the information Mr. Verrier describes in his affidavit will create a genuine issue of material fact with respect to his claim that he was retaliated against when he: (1) received a letter of reprimand; (2) was issued a PIP; (3) was allegedly threatened with removal on July 20, 2007; and (4) received a notice of proposed removal from Ms. Fowler in January 2008, after his doctor deemed him unable to work indefinitely. Both the letter of reprimand and the PIP were issued *before* Mr. Verrier had made any contact with an EEO counselor and, therefore, cannot have been retaliatory. Additionally, discovery will not create a genuine issue of material fact as to Mr. Verrier's allegation that he was threatened with removal on July 20, 2007 in retaliation for contacting an EEO counselor because he has not even alleged who made the threat, nor how he or she did so. Such information is within Mr. Verrier's possession, yet he

---

performance review and the qualifications of his supervisors. (*See* Verrier Rule 56(f) Decl. at 2.) He also identifies a need for his position description, a copy of his personnel file, the workforce profile for 2006-2007, documents related to complaints by other employees, and communications regarding his proposed removal. (*See id.* at 2-3.) Furthermore, he states that he requires testimony of co-workers as to the hostile work environment, evidence of his qualifications, and deposition testimony of his supervisors about their knowledge of his EEO activities. (*See id.* at 3.)

has failed to support his allegation with specific facts, even after amending his complaint.  The

court declines to allow Mr. Verrier to embark on a fishing expedition with regard to a claim that

he has failed to support with facts that should be readily available to him.

Moreover, none of the discovery identified by Mr. Verrier will demonstrate that the

defendant's legitimate non-discriminatory reason for proposing his removal on January 16, 2008

– his doctor's medical evaluation – was pretextual.  It is undisputed that Mr. Verrier's doctor

wrote to IHS on January 8, 2008, "advising them concerning Plaintiff's mental health that

'although continued improvement is likely, it is unlikely that a return to his previous department

will ever be recommended.'"  (Am. Compl. at ¶ 26; *see also* Def.'s Summ. J. Mem. at Ex. 15.)

Citing this letter, Ms. Fowler proposed Mr. Verrier's removal from his position, and Mr. Verrier

voluntarily retired.  Having alleged in his complaint that his doctor determined he was unable to

work, discovery by Mr. Verrier will not create a genuine issue of material fact because it is clear

that his inability to work is undisputed.  Thus, discovery will not change the outcome of this case

with regard to Mr. Verrier's retaliation claim either.  Accordingly, the court will deny Mr.

Verrier's 56(f) motion.

C.    *Summary Judgment*

Mr. Verrier complains that he was discriminated against because of his race, gender and

age when he was issued a letter of reprimand on April 12, 2007, placed on a PIP on June 22,

2007, and allegedly threatened with removal on July 20, 2007.  He also alleges that each of these

events was in reprisal for his EEO activities, and that Ms. Fowler further retaliated against him

by proposing his removal on January 16, 2008.  But for the following reasons, the defendant is

entitled to summary judgment on all of Mr. Verrier's claims.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

"should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  Conclusory or speculative allegations do not create a genuine issue of material fact, nor does a "mere scintilla of evidence".  *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (internal quotation marks omitted, and citing *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).  The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Title VII makes it unlawful to discriminate in employment on the basis of race, color,

religion, sex, or national origin.  *See* 42 U.S.C. § 2000e-2(a)(1).  Furthermore, Federal

employees over the age of forty who allege discrimination on the basis of age have a cause of

action under the ADEA.[5]  *See* 29 U.S.C. § 633(a); *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir.

2006).  Where, as in this case, there is no direct evidence of discrimination, such claims are

analyzed under the three-pronged burden shifting framework set forth by the Supreme Court in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Laber*, 438 F.3d at 430.  Under

this framework, to defeat a defendant's motion for summary judgment a plaintiff must first make

out a *prima facie* case of discrimination or retaliation under Title VII or the ADEA.  *Id*. at 430,

432; *Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007).  If the plaintiff succeeds in

carrying out this initial burden, then "the burden shifts to the employer . . . 'to articulate a

legitimate, nondiscriminatory reason for the adverse employment action.'"  *Lettieri*, 478 F.3d at

646 (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004)

(en banc)).  Once such a reason is provided, the burden shifts back to the plaintiff to demonstrate

that the given reason was a pretext for unlawful discrimination.  *Id*.

    1.    *Discrimination*

        a.    *Exhaustion of Administrative Remedies*

    Mr. Verrier's allegations of discrimination with respect to the letter of reprimand issued

to him on April 12, 2007 and the alleged threat of removal he received on July 20, 2007, will be

dismissed for failure to exhaust administrative remedies.

    Federal employees alleging discrimination under Title VII must exhaust their

administrative remedies before filing suit.  *Laber*, 438 F.3d at 415.  The "administrative remedies

available for federal employees are significantly broader than the administrative remedies for

---

[5]      It is undisputed that Mr. Verrier is over the age of forty.

employees in the private sector." *Id*. at 416.  Pursuant to regulation, federal employees "who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a).  And they "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1).  Failure to comply mandates dismissal, *Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 734 (E.D. Va. 2006) (citing *Zografov v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir. 1985)), unless the plaintiff provides evidence that (1) he was unaware of the time limits for contacting an EEO counselor, or (2) the government engaged in affirmative misconduct in relation to the plaintiff seeking counseling. *Id*. at 734-35; 29 C.F.R. § 1614.105(a)(2).

The exhaustion requirements for federal employees alleging discrimination under the ADEA are different, however.  Federal employees complaining of age discrimination do "not have to seek relief from [their] employing agency or the EEOC at all." *Stevens v. Dep't of Treasury*, 500 U.S. 1, 6 (1991).  Rather, federal employees can "present the merits of [their] claims] to a federal court in the first instance." *Id*.  However, where an individual alleging age discrimination has not filed a complaint with the EEOC, he may not file a civil action unless he has given no less than thirty days notice to the EEOC of his intent to file such an action. 29 C.F.R. § 1614.201(a).  This notice must be filed within 180 days of the date when the alleged unlawful practice occurred. *Id*.

It is undisputed that Mr. Verrier was issued a letter of reprimand on April 12, 2007 and first contacted an EEO counselor on June 18, 2007, well over forty-five days later.  It is also clear from the record that Mr. Verrier never told an EEO officer that he was threatened with

removal from his position in July 2007, let alone within forty-five days of the alleged threat.[6]

Because Mr. Verrier neither has alleged, nor put forth evidence, that he was unaware of the time

limits for contacting an EEO Counselor, or that any government misconduct prevented him from

doing so, equitable tolling is inappropriate in this case. *See Moret v. Geren*, 494 F. Supp. 2d

329, 339 (D. Md. 2007) (finding that equitable tolling of the forty-five-day limitations period

was inappropriate where the plaintiff simply "failed to seek out an EEO counselor in a timely

manner."). Thus, Mr. Verrier failed to comply with the requirements of 29 C.F.R. §

1614.105(a)(1) with regard to the letter of reprimand and the alleged threat of removal.

Furthermore, even though Mr. Verrier was not required to exhaust his administrative

remedies under the ADEA before filing a civil suit, he was required to provide the EEOC with at

least thirty days notice of his intent to sue, and there is nothing in the record showing that Mr.

Verrier filed such notice with respect to the letter of reprimand or the alleged threat of removal.

Accordingly, Mr. Verrier's Title VII and ADEA claims of discrimination with regard to the letter

of reprimand and the alleged threat of removal in July 2007 are not properly before this court and

must be dismissed.

b.    *Remaining Discrimination Claims*

The court will also grant summary judgment as to Mr. Verrier's remaining discrimination

claims because he is unable to make out a *prima face* case under either Title VII or the ADEA.

To set forth a *prima facie* case of discrimination under the *McDonnell Douglas* framework, a

plaintiff must show that: (1) he is a member of a protected class under Title VII or the ADEA;

(2) he suffered an adverse employment action; (3) he was performing his job duties at a level that

---

[6]     Although Mr. Verrier's formal EEO complaint, filed on April 1, 2008, mentions a "threat
of removal from federal service – LTR dated January 16, 2008", there is no mention of a threat
from July 2007.  (*See* Def.'s Summ. J. Mem. at Ex. 17.)

met his employer's legitimate expectations at the time of the adverse employment action; and (4)

similarly situated employees outside of his protected class(es) received more favorable treatment.

*See White v. BFI Waste Services, LLC*, 375 F.3d 288, 295 (4th Cir. 2004).  Although it is

undisputed that Mr. Verrier is over the age of forty and within the protected race and gender

classes for the claims he has made, he has not shown a *prima facie* case of discrimination under

Title VII or the ADEA.

     First, Mr. Verrier has not shown that he experienced an actionable adverse employment

action.  For substantive discrimination claims, "[a]n adverse employment action is a

discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's

employment."  *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (internal

quotation marks and citation omitted).  The Fourth Circuit has made clear that although a poor

performance evaluation could affect a term, condition or benefit of employment, it "is actionable

only where the employer subsequently uses the evaluation as a basis to detrimentally alter the

terms or conditions of the recipient's employment."  *James v. Booz-Allen & Hamilton, Inc.*, 368

F. 3d 371, 377 (4th Cir. 2004) (internal quotation marks and citation omitted).  A poor

performance evaluation "merely causing a loss of prestige or status is not actionable."  *Id.*

(internal citation omitted); *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 330 (D. Md. 2003) (stating

that a poor performance rating "does not in itself constitute an adverse employment action.")[7];

*Newman v. Giant Food, Inc.*, 187 F. Supp. 2d 524, 528-29 (D. Md. 2002) (finding that a verbal

---

[7]    In *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006), the
Supreme Court held that an adverse employment action is more broadly defined for retaliation
claims than for substantive discrimination claims.  At the time of the *Jeffers* opinion, however,
courts in the Fourth Circuit used the same definition, "a discriminatory act that adversely affects
the terms, conditions, or benefits of the plaintiff's employment", for both types of claims.
Accordingly, although the court in *Jeffers* dealt with a retaliation claim, its reasoning applies to
Mr. Verrier's substantive discrimination claims.

warning and counseling letter "without evidence that [they] . . . could lead to further disciplinary

action, such as termination, [did] not constitute an adverse employment action").  Rather, a poor

performance rating "is a mediate step, which, if relied upon for a true adverse employment action

(e.g., discharge, demotion, etc.) becomes relevant evidence."  *Jeffers*, 264 F. Supp. at 330

(internal quotation marks and citation omitted); *cf. Lewis v. Forest Pharm., Inc.*, 217 F. Supp.

638, 648 (D. Md. 2002) (finding that a warning letter that barred advancement and threatened

probation was an adverse employment action.)

  Mr. Verrier has not shown that the PIP altered the terms, conditions or benefits of his

employment.[8]  Although the PIP states that failure to improve would result in reassignment,

grade reduction or removal, on its own, the PIP did not alter any aspect of Mr. Verrier's career.

Rather, it outlined ways in which Mr. Verrier's supervisors would help him improve and

indicated that they "believe that you can improve your work to meet the standards for your job".

(*See* Def.'s Summ. J. Mem. at Ex. 9.)  Furthermore, the PIP was temporary – to last only ninety

days – provided Mr. Verrier improved, and applied solely to those aspects of Mr. Verrier's

performance that were lacking.  (*See id*.)  The focus of the PIP was thus reconciliation, rather

than demotion or removal.  Unlike in *Lewis*, 217 F. Supp. 2d at 648, where the court determined

that a letter of reprimand had been shown to "absolutely bar advancement" and "imminently

threaten[] probation" and was therefore an adverse employment action, here, Mr. Verrier has not

shown that the PIP was of any imminent consequence to his employment other than to affect his

prestige or status.  *See James*, 368 F. 3d at 377.

  Second, even if the PIP were an actionable adverse employment action, Mr. Verrier has

---

[8]   Mr. Verrier failed to even dispute in his opposition brief the defendant's argument that being placed on a PIP is not an adverse employment action.

neither shown, nor even alleged, that similarly situated employees outside of his protected classes were treated more favorably than he was.[9]  In fact, the only evidence in the record of other employees receiving similar treatment is that Ms. Winfrey issued a PIP to a Native-American female employee over the age of forty for not following directives.  (*See* Def.'s Summ. J. Mem. Ex. 3 at ¶ 32.)  Without even identifying an employee outside of his protected classes who was treated more favorably than he was, Mr. Verrier has not shown a *prima facie* case of employment discrimination under Title VII or the ADEA and the defendant is entitled to summary judgment on his discrimination claims.

    2.    *Retaliation*

The defendant is also entitled to summary judgment on Mr. Verrier's claim that he was retaliated against in violation of Title VII when he was: (1) issued a letter of reprimand; (2) placed on a PIP; (3) allegedly threatened with removal in July 2007; and (4) asked to leave in January 2008.[10]  To establish a *prima facie* case of retaliation, a plaintiff must show that he: (1) engaged in a protected activity; (2) the employer acted adversely against him[11]; and (3) the

---

[9]    Although Mr. Verrier's amended complaint states that a Native-American man, Ken Cannon, filled his position once he left IHS, he has not alleged that anyone outside of his protected classes was not placed on a PIP for similar behavior.  (*See* Am. Compl. at ¶ 30.)

[10]    To the extent that Mr. Verrier alleges that his "whistleblowing" activities constituted protected activity under Title VII (*see* Am. Compl. at ¶ 18, 22), he is incorrect.  Whistleblowing on department wrongdoing unrelated to Title VII violations does not constitute protected activity.  *See Jamil v. Sec'y Dep't of Def.*, 901 F.2d 1203, 1207 (4th Cir. 1990) (explaining that to state a claim of retaliation, the plaintiff must show that his "whistleblowing was in opposition to conduct or practices violative of Title VII", and that "Title VII is not a general 'bad acts' statute" in that it does not address "discrimination for whistleblowing.")

[11]    The law is unclear as to the definition of an adverse employment action for purposes of a federal employee's retaliation claim.  *See Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008) (stating that "we note that there is disagreement about whether the Supreme Court's decision regarding the scope of the adverse action requirement in *Burlington* . . . applies to federal employees", but that "[w]e do not reach this question").  As motioned earlier, *supra* note 7, the Supreme Court held in *Burlington* that in retaliation claims, adverse employment action is

18

protected activity and the adverse action were causally connected.  *Holland*, 487 F.3d at 218.
The *McDonnell Douglas* framework also applies to discrimination claims.

As a preliminary matter, it is undisputed that Mr. Verrier first engaged in protected
activity when he contacted an EEO officer by email on July 18, 2007.  Accordingly, even if
found to be adverse actions, neither the April 2007 letter of reprimand, nor the June 2007 PIP,
can form the basis for a retaliation claim, because they occurred *before* Mr. Verrier engaged in
protected activity and therefore no causal connection can be, or has been, shown.

Furthermore, Mr. Verrier has not pled facts sufficient to state a *prima facie* case of
retaliation with regard to the alleged threat of removal he received on July 20, 2007.  Nowhere in
the amended complaint does Mr. Verrier allege who made this supposed threat or in what
manner they did so.  Such facts are within Mr. Verrier's possession, yet he has not alleged
anything other than "he was threatened with removal from his position on July 20, 2007." (Am.
Compl. at ¶ 9.)  A plaintiff may not withstand a motion for summary judgment on conclusory or
speculative allegations alone.  *Thompson*, 312 F. 3d at 649.  Without setting forth specific facts
to support his claim, Mr. Verrier cannot show that a genuine issue exits for trial.  Thus, Mr.
Verrier's bald allegation of a threat of removal does not state a *prima facie* case of retaliation.

Last, the defendant is entitled to summary judgment on Mr. Verrier's retaliation claim
with respect to Ms. Fowler's January 16, 2008 letter proposing his removal because assuming
without deciding that he could show a *prima facie* case of retaliation, he cannot rebut the
defendant's legitimate non-discriminatory reason for proposing his removal: his doctor's

---

defined more broadly than in substantive discrimination claims.  548 U.S. at 67.  In retaliation
claims, to show adverse employment action, a plaintiff must show that "a reasonable employee
would have found the challenged action materially adverse, which in this context means it well
might have dissuaded a reasonable worker from making or supporting a charge of
discrimination." *Id*. at 68.

determination that he was no longer fit to perform his job functions.  As discussed above, there is no dispute that on January 8, 2008, Mr. Verrier's doctor advised IHS that it was "unlikely that a return to his previous department will ever be recommended."  (Def.'s Summ. J. Mem. at Ex. 15.)  As a result of this recommendation, Ms. Fowler determined in accordance with federal regulation that Mr. Verrier was unable to perform the essential functions of his job, with or without accommodation, and recommended his removal.  (*See id*. at Ex. 16.)  Inability to perform one's job, as determined by one's doctor, is a legitimate non-discriminatory reason for an employer to propose an employee's removal.  Mr. Verrier has presented no evidence that the defendant's proffered reason for proposing his removal is false or pretextual.  To the contrary, Mr. Verrier's complaint itself alleges that his doctor found him unlikely to ever be capable of returning to work.  (*See* Am. Compl. at ¶ 26.)  Accordingly, Mr. Verrier has not rebutted the defendant's legitimate non-discriminatory explanation for proposing his removal, and the court will grant the defendant's motion for summary judgment as to Mr. Verrier's retaliation claim.[12]

---

[12]     Mr. Verrier also contends in his opposition memorandum to the defendant's motion that "he was a victim of a constructive discharge."  (Pl.'s Opp'n Mem. at 8.)  Although he used the phrase "constructive discharge" in the amended complaint three times, (*see* Am. Compl. at ¶¶ 12, 29 & 30), he did not allege a separate cause of action for constructive discharge.

But even assuming without deciding that Mr. Verrier in fact alleged a claim for constructive discharge, the defendant would nevertheless be entitled to summary judgment because, among other reasons, Mr. Verrier has not alleged facts showing that he was subjected to objectively intolerable working conditions.  *See Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006) (noting that to state a claim for constructive discharge a plaintiff must show (1) the deliberateness of the employer's actions, and (2) the objective intolerability of the working conditions).  Although Mr. Verrier was reprimanded and placed on an improvement plan as the result of his supervisors' disappointment with his job performance, a pattern of discipline or poor performance evaluations does not amount to an objectively intolerable working environment.  *See Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (affirming dismissal of plaintiff's claim for constructive discharge because allegations that the plaintiff's "supervisors yelled at her, told her she was a poor manager and gave her poor evaluations, chastised her in front of customers, and once required her to work with an injured back" did "not establish the objectively intolerable working conditions necessary to prove a constructive discharge").

## CONCLUSION

For the foregoing reasons, the plaintiff's motion to strike and motion for continuance of the defendant's motion will be denied.  The defendant's motion for summary judgment will be granted.  A separate Order follows.


_____March 23, 2010_____                    _____/s/_____
          Date                                                        Catherine C. Blake
                                                                      United States District Judge